e Giloros. Next case on the count is Horton versus Wesseling. Good morning, your honors. May it please the court, Steven Ciotoli representing the appellant from the law firm of Catooso and Ciotoli. It's a tough act to follow, your honors, but I will proceed. The district court in granting this motion for judgment on the pleadings found primarily on the issue of collateral estoppel, so I'm going to address that issue first. We take exception and find error with the district court decision on collateral estoppel in several respects. We think it's just too broad and too far reaching with regard to how the court applied collateral estoppel. Basically the way I look at it, what the district court is doing is really giving a free pass or a blank check to the hearing officer in the student's disciplinary hearing by saying whatever decision they made at any point in the process, that decision can't be challenged in federal court under any type of procedural due process claim because they made the decision and now we're collaterally estopped from challenging it. It becomes like a closed loop, your honors. We can never quite break into that closed loop based on that circular logic. That's not due process. It's a no-win situation for the complaining party, for the student. It's a lose-lose for the student. It just goes too far to say that in any of these quasi-judicial proceedings such as we have here, and there's many different varieties of these quasi-judicial proceedings, I'm not exactly sure if I would elevate a school disciplinary hearing to that level, but leaving that aside for a moment, no matter what this hearing officer decided, the court is saying you can't re-argue it, you can't revisit it, they've decided, you're collaterally estopped. It's too broad, it's too general. What specifically was not addressed? It seems as if the request for the bullying report and the football folder was never addressed. Are those your principal claims of how collateral estoppel doesn't apply? I would include those, your honor, but let me give you another example. We also have the bus video, which is exculpatory evidence. But that was presented in the second hearing. In the second hearing, which by that point, my client had already lost on the first hearing. I think at that point the process was already tainted. But let me give you, I think, an even better example. One of our allegations is these ex parte communications between the hearing officer and the school administrators and then with the Board of Education. Ex parte communications, it's like the judge in a criminal proceeding having meetings with the prosecutor and excluding defense counsel. Really, it's kind of a rough equivalent. Now that wasn't necessarily decided or fully litigated in the superintendent's hearing. How many ex parte communications were? I was present at the second hearing when the hearing officer actually was in the conference room. And this is just at the school, it's nothing fancy, your honor. Was actually in the conference room with the superintendent and several administrators. And they were in there for some period of time. I have no record of what was discussed. Well, good question. And isn't that a part of the issue? Listen, I don't have a record of what they discussed. I'll assume it was more than just whether the weather was nice that day. Maybe how long do you think the hearing is going to last today? You know, I think it raises lots of questions. I don't have notes from that hearing, from that communication. I don't know what they were discussing. But not only did they do it that one time, but then when you have to do this appeal to the Board of Education, which is your really only appeal right there, again, we're sitting outside where the board is. And the hearing officer is in there, they shouldn't have been present. The hearing officer, it's an appeal of that decision. And the hearing officer is in there telling the Board of Education what's going to take place. Again, I'm not in the room. How do we know that? What she said to them. Okay, I know she's in the room. I know they're in there for some extended period of time. I don't have a record of what they're saying. There would be no record. There's no process or procedure for getting that record. But it does raise some suspicion, some concern. So what's the point of then bringing a lawsuit on that? I'm entitled to discovery. I'm entitled to take depositions. I would take the deposition of Ms. Wesley and say, when you went into that conference room, what did you discuss? And maybe she'll say- Have you been able to do that in an Article 78 proceeding? I don't believe so, Your Honor. Let me address the Article 78 proceeding. An Article 78 is a procedure to challenge what the municipality, the school district, is doing. Okay? Here we're suing the hearing officer. She's a private individual. We're suing the hearing officer. You could have brought action against the district and the superintendent, couldn't you? Well, we did bring that action, Your Honor, and that was dismissed by the court. And I've always thought that the claim against the hearing officer was the better claim. So if I was challenging the suspension- Did you appeal the dismissal of those parties? We filed an appeal, but we didn't perfect or proceed with the appeal. Because my feeling at the time- You want to get the benefit of not having appealed the dismissal of the parties. Correct, Your Honor. I think the better claim was against the hearing officer, because she's the one who made all these decisions. She's the one who really drove this train. She's the one who excluded and withheld the evidence. She's the one who denied the discovery. She's the one who had these ex parte communications. As Your Honor mentioned- You could have obtained at the Article 78 hearing an expungement of the suspension, right? Again, that would be a decision for the school district. So let's say the school district at any point, even- Why do you say it's a decision of the school district? Why is it a decision of the state court in the Article 78 proceeding? That would be a remedy against the school district. So in other words, I'm saying I'm looking for my remedy against this hearing officer, this private individual, okay? An Article 78 is only against the school district. It only, and by the way, the only remedy we would get, as the district court said, would be expungement of the record. I'm not quite sure how much of a remedy that is. The student's graduated. At that point, it's moot. I think it's just getting crumbs off the table. Quite frankly, what we're suing here for are money damages and attorney's fees. And this is the only process and procedure that we can seek that. We can't get that through an Article 78 against the school district. We can't get that through an appeal to the Commissioner of Education, which is also against the school district. This is our only remedy. This is our only way to try to- Just so I'm understanding. So the remedies are different, and you could not obtain money damages. You could obtain a declaration of procedural due process deficiencies and expungement of the suspension. As to the school district only, I would agree with that, Your Honor. As to the school district only, but I think this is a slightly different thing we're seeking here. It's against this individual who made these decisions. That's what we're trying to accomplish here. Thank you. Thank you, Your Honor. Three minutes in rebuttal. Thank you, Your Honor. Good morning, Mr. Chief Judge. May it please the court. My name is Whitney Camero, and I'm an attorney with the law firm of Hancock, Estabrook, and Syracuse. And I represent the defendant appellee, Susan Westling. And as it's already been discussed here, she was the hearing officer. And I think we should take a moment and take a step back and actually consider what exactly she was and her function underneath the education law in New York State. She is a superintendent's designee here. Appointed, these are powers that generally would be a fall underneath the superintendent specifically, but they're designated for a hearing officer for a variety of reasons. And as I'm sure Mr. Ciotoli would tell you as well, this is very common with the school districts in New York. He also used the words of hers, decision, many times. Now it's very, very clear by the New York State education law that what she does is she, yes, conducts a hearing. And in this case, two hearings after there was some concern from the student and his parents that additional evidence needed to be considered. But- Is she an employee of the school district at the time? No, she's actually an employee of, well she was, excuse me, an employee of BOCES at the time. At the time she was? Yes. It's alleged she was formerly an employee of the school district, is that right? No, I don't believe that has been alleged. But she, at the time of the hearings, was an employee of BOCES. Employee of BOCES, yes, so just from my practice, there are labor relations specialists that, and actually the school district has many options, they can choose outside attorneys that they know, or maybe other professionals in the educational field with this experience, or very often the school districts I work with use the labor relations specialists from BOCES to step in for whatever reason the superintendent's busy or whatever particular reason. So this is a hearing the superintendent could have conducted? Absolutely, and it's very clear, and I just want to make sure that I point out the language of section 3214 of the education law. This is an advisory opinion that the superintendent may accept in all, in part, or not at all. So the decisions that Ms. Wessling made, the decisions, were actually recommendations that are adopted by the superintendent and then therefore by the district, and as we have already discussed, the district and the Board of Education, who also ended up listening to an appeal, they also considered this information as well. And again, they made these decisions specifically, not the hearing officer. I think that's a very, very important distinction. In turning actually back to a question that Judge Roney raised specifically about what the evidence specifically was not addressed. I think it's important to point out on the record, specifically at the appendix, I believe it's at 150 and 152. We have submitted there was communications from Mr. Ciotoli, because again, he was representing the student in the proceedings that were before. And I should say there was two hearings. In the second day of hearing, he was there. He offered witnesses, the student was allowed to offer testimony on behalf of himself, and they were allowed to present additional evidence, and evidence was considered. After the decision was made by the superintendent, and an appeal was made to the Board of Education, there was additional information back in February of 2015, I believe, from counsel's letter to the Board of Education, pointing out very specifically that they were concerned about procedural deficiencies at the hearing, as well as concerns and requests that certain what they claimed was exculpatory evidence be reconsidered. The board, by all means, conducted their hearing. Actually, I should not say conducted their hearing, because the proceedings here specifically are, they're done in executive session. There are no presentations specifically by attorneys on behalf of the district or on behalf of the student who is appealing this as well. Thereafter, there was a stay that was requested once the, excuse me, once the board specifically adopted the prior decision by the superintendent. There was an appeal to the state commissioner, a stay was requested, it was denied, but it was still ongoing. And there's specific state commissioner's decisions that have specifically said, and addressed with this certain instance, when you're dealing with the senior and disciplinary proceedings, that once a senior graduates, it is not in fact moot, just because that person has not been able to, perhaps, enjoy going to maybe their prom, or enjoy the privileges of attending a senior trip, or the like like that. They were still able to receive their education. Again, Mr. Horton has graduated, and he graduated on time from high school. And in fact, he did have that remedy to be able to continue on with his appeal to the state commissioner. On his own volition, it was withdrawn, stating in his opinion, frankly, it was moot. Again, the state commissioner- So just in terms of the facts, didn't he miss most of the, much of his senior year? Actually did miss some of his senior, but there was actually opportunities and offers that if he attended specific counseling, including, I believe, anger management and the like, that he would actually be able to come back. But again, it should be noted that all procedures were followed as far as providing him education that is required for when students are out of school for various reasons, disciplinary, health, or otherwise, he was provided adequate education, that has not been part of the case. I just go back to the record for a question, and that is the bus video transcript. We've got a bunch of versions of it in the appendix. It's a little hard to follow, and my understanding is the initials SH are not for Schuyler, they're for somebody else, is that right? I'd have to look specifically at what you're pointing at. Generally it is Schuyler Horton, but I may be on rebuttal. Mr. Staple- Let me ask you this, we haven't seen it, but we've read the transcript of it, but is it clear from the video itself that they said he wasn't there for the fight? That's not clear, absolutely not. So if there was an opportunity for Ms. Westling to testify, and I have discussed with her at length her review. She was not convinced at all whatsoever that that was by any means a sculptatory evidence, or that it would ever counterweight the additional evidence against the student that he was in fact part of this pretty heinous attack of another student. Did she bring it to the attention though of the other decision makers, even if she herself was not convinced? Yeah, so she reviewed it, it was part of the record. And she then told them explicitly about this tape, and then said, here is my view, or was it that she didn't raise it with the- No, that's an excellent question, thank you, and my apologies, I don't mean to interrupt. No, so how it actually works in dealing with school boards, and I have been myself in this position, is a hearing officer prepares a record specifically, and it's all things that are admitted. There can be transcripts of the proceedings. It is whatever is documentary evidence, or videotape evidence, or whatever evidence may be that is entered in, is then therefore transferred to the Board of Education. There's no opinion beyond the written recommendation that was offered to the superintendent. That is the only piece of information. There was not specific discussions about any questions about why she thought a certain way, or why she might have perceived the evidence in a certain light. Beyond what was, and I shouldn't even say it was discussed. The only thing that was presented was the actual report. That was it, and the record within itself. There was no other discussions about the merits. So did the superintendent get the video? Yes. It was made available to the superintendent. Yes, yes, absolutely, because the video was actually a bus video that was a district property. So that's where it came from specifically, so. If I may continue, specifically about the Article 78, the availability of an Article 78 as a proper remedy. I note in Appellant's paper specifically that he is seeking money damages against my client. I think it's very clear in this circuit that just because specifically money damages or the sort of relief that is available under Section 1983 is not available in Article 78, does not mean that it is not an adequate post-deprivation remedy. In fact, and I would just like to just repeat just and briefly from the United States Supreme Court found in Wood versus Strickland, that the role of the court should be very limited in these circumstances. In 1983, does not extend the right to re-litigate in federal court evidentiary questions arising in a school disciplinary proceedings. Judge D'Agostino, in her decision in order, lay this out very clearly. And we urge the court to affirm her decision that not only should there be, this case be dismissed for collateral estoppel, but also because of the merits going specifically to the procedural and substantive due process here. If there's any other questions at this time, I'm happy to answer them. Otherwise, I'll yield the remainder of my time. Thank you. Thank you. Thank you. Let me reply, your honors, to just a couple of points. First, the issue that the hearing officer was only making a recommendation and that the superintendent made the final decision. I think to a certain extent, that's exactly our point. All the evidentiary issues, she was the decision maker. She's the one who withheld the bus video. She's the one who made the decisions on whether the bullying report or the folder would be admitted. She's the one who had the ex parte communications. Again, she's the one driving the train on this. You withhold the bus video? In the first hearing, yes. In that first hearing, my clients were not represented by counsel. Were people aware of the bus video? Yes. Let me add a little context, your honor. And that's why there's so many factual issues here. These other boys who were involved in this incident, which my client has categorically stated he was not a part of. These other boys also brought in for a superintendent's hearing and suspended. They actually used the bus video in those other hearings, because what's happening? In that bus video, the boys were admitting it, that they did it. Now in the bus video, the boy very clearly says, what does it say? The one line we keep going to in the bus video is when they say, Skyler, Skyler, you missed it. So the bus video is these boys on the bus leaving BOCES to go back to their school, talking about what they just did. And then Skyler walks on the bus. Why does he walk on late? because he's out back cleaning some equipment from his BOCES class. He walks on the bus, and they go, Skyler, Skyler, you missed it. To us, that's exculpatory evidence. It should have been heard. They had that video. They didn't use it for the first hearing. My client heard about it, because also there was a criminal piece to this, and heard it from the assistant DA, somebody from the state police saying, you know there's a bus video on this. Really? They didn't know it. They requested it. They got it. They retained counsel. We had the second hearing. Quite frankly, even the second hearing was tainted. They kind of shifted the burden of proof over to Skyler. It's their burden of proof, but they conducted that second hearing like somehow he had to prove his innocence. Okay, you want to show the bus video? They showed the bus video. She completely disregarded it. So that's just one piece of it. That's also when they had the ex parte communications with the superintendent. Which we found to be improper. And those are facts which have to be accepted as true for this process. And we'd like to conduct discovery on it. You're right, he missed his entire senior year. This happened in around October. You only get your senior year once, your honor. It's a once in a lifetime chance. He missed it. He didn't walk across the stage to get his diploma. No senior class trip, nothing. It's gone forever. It's lost forever. For something he never did, for something they really just railroaded him through. And we've been trying to hold back that train ever since. And really this is our last stop, our last chance. Thank you, your honors. Thank you both for your arguments. The court will reserve decision. Final two cases are on submission. The clerk will adjourn court.